IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DR. STELLA IMMANUEL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-1252 |
| | ) | |
| | ) | **TRIAL BY JURY** |
| TEGNA, INC. | ) | **IS DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

# COMPLAINT

Plaintiff, Dr. Stella Immanuel ("Dr. Immanuel"), by counsel, files the following Complaint against Defendant, Tegna, Inc. ("Tegna").

Dr. Immanuel seeks (a) compensatory damages and punitive damages in the total sum of **$25,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from November 3, 2021 to the date of Judgment, and (c) court costs – arising out of Defendant's defamation and defamation by implication.

## I. PARTIES

1. Dr. Immanuel is a citizen of Texas. She suffered substantial harm to her reputation in Virginia and elsewhere as a result of Tegna's defamation and defamation by implication.

2. Tegna (NYSE:TGNA) is a Delaware corporation, headquartered in Tysons, Virginia. Tegna is a media company. It operates television stations and radio stations in multiple markets across the United States, including KHOU-11 in Houston,

1

Texas. Tegna represents that it reaches 41.7 million television households, or approximately 39 percent of all TV households nationwide, and that it reaches 75 million adults each month across its digital platforms. Across Twitter, Facebook and Instagram, Tegna stations have over 32 million social media followers. [https://www.tegna.com/]. The broadcast and posts at issue in this case, identified below, were published and read in Virginia, where Dr. Immanuel suffered substantial damage. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated … The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").

## II.   JURISDICTION AND VENUE

3.   The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.   Tegna is at home in Virginia, and is subject to general and specific personal jurisdiction in Virginia.

5.   Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2). Tegna is subject to personal jurisdiction in Virginia. The statements at issue

were intentionally broadcast and published in Virginia, including in the Eastern District, where Dr. Immanuel suffered substantial injury.

6. Prior to filing this action, Dr. Immanuel served written notice on Tegna specifying the statements that are defamatory and demanding, *inter alia*, that those statements be retracted and/or corrected and removed from the Internet. Tegna failed to retract and correct the false and defamatory statements.

### III. STATEMENT OF MATERIAL FACTS

7. Dr. Immanuel is a licensed primary care physician. She has privately practiced medicine for over twenty (20) years. In 2020 and 2021, Dr. Immanuel was one of the medical professionals on the frontline of advocating for early treatment of the novel coronavirus (COVID-19) with hydroxychloroquine, also known as "HCQ". As of November 2021, she had personally treated hundreds of patients with COVID-19 – patients that have diabetes, patients that have high blood pressure, patients that have asthma, old people. Dr. Immanuel prescribed a combination of HCQ, zinc and zithromax. The results were excellent. Her patients are all well.[1]

8. On November 3, 2021, Tegna broadcast a segment entitled, "***Texas Medical Board fines Dr. Stella Immanuel over hydroxychloroquine prescription for COVID***" and published an article on the website of KHOU-11 entitled, "***Texas Medical Board takes 'corrective action' against doctor over hydroxychloroquine prescription for COVID patient***":

---

[1] Dr. Immanuel has lost one patient, a 92 year old diabetic who was not eating and refused to go to the hospital for fluids. She put herself, her staff, and many colleagues on HCQ for prevention because, by the very mechanism of action, HCQ works early and as a prophylaxis against COVID-19. Dr. Immanuel sees COVID-19 patients every day. She wears only a surgical mask. Neither she nor her staff has ever gotten sick.

3

https://www.khou.com/video/news/health/texas-medical-board-fines-dr-stella-immanuel-over-hydroxychloroquine-prescription-for-covid/285-36006e58-c07f-4cec-a109-19fae242a0a2;

https://www.khou.com/article/news/health/hydroxychloroquine-doctor-stella-immanuel-texas-medical-board/285-aa37adb5-2573-4d35-9106-851f6731fdcf

(the "Broadcast" and "Article")]. The Broadcast and Article include several expressly false statements and defamatory implications about Dr. Immanuel, including:

- Dr. Immanuel was fined by the Medical Board and corrective action was taken against her over HCQ prescription for COVID. In truth, the Medical Board did not challenge Dr. Immanuel's prescription of HCQ for COVID patients. The remedial plan entered into between Dr. Immanuel and the Medical Board, reviewed by Tegna prior to publication, clearly states that Dr. Immanuel was disciplined for an alleged failure to give adequate informed consent to one patient for the prescription of HCQ.

- "The Doctor also has a history of making some outrageous and bizarre claims, like this: 'Doctors make medicine using alien DNA' and some women's health issues, she would claim, are caused by dreams about having sex with demons."

- Dr. Immanuel spread "unproven claims".

- "In the past, Immanuel has made bizarre medical claims, such as suggesting doctors use alien DNA to create some medicines and attributing some women's health issues to fantasies about sex with demons."

- "Gold and the other doctors on screen are actual doctors, and they spend the next 45 minutes talking about COVID and a lot of unproven or false claims about it, like this one from Dr. Stella Immanuel: [playing a heavily edited and truncated clip of Dr. Immanuel on the steps of the United States Supreme Court, in which Dr. Immanuel states, "So I came here to Washington DC to tell America nobody needs to get sick. This virus has a cure. It is called hydroxychloroquine"]. This is the claim that went mega-viral, so let's break it down. Is hydroxchlooquine a cure for COVID? Both the CDC and WHO confirm that there are quote currently no licensed medications to cure COVID-19 … So currently there is no known cure for COVID [displaying a chart that states or implies that Dr. Immanuel's statement is "False"] … The overall claim that hydroxychloroquine is a cure for COVID is false."

(Each a "Statement" and together the "Statements").

4

6. In addition to cable television and the Internet, Tegna repeatedly republished the false Statements to over 796,000 social media followers in Virginia and elsewhere on Twitter:

https://twitter.com/KHOU/status/1456033499941642244;

https://twitter.com/KHOU/status/1456256921707499525.

7. Taken as a whole, the clear defamatory gist of the Statements is that Dr. Immanuel committed malpractice by prescribing HCQ and was disciplined by the Medical Board for it; that she unfit to be a medical doctor; that her medical judgments and advice are unsafe and/or unsound; and that she peddles disinformation, including harmful medical treatments and, therefore, endangers patients. The Broadcast and Article conveyed a clear defamatory implication to viewers and readers that was intended or endorsed by Tegna, *e.g.*:

> https://twitter.com/LennyDykstra/status/1458863758441332737
> ("What garbage!");
>
> https://twitter.com/LizDylan123/status/1462801559650189314
> ("Why she is still allowed to practice medicine?");
>
> https://twitter.com/Ed_Tracey/status/1474032135946309637
> ("Besides quack medicines, she was also 'Dr. Demon Sperm'");
>
> https://twitter.com/mjaye007/status/1475315388103610369
> ("If only the hospitals could tell them that they are unapproved patients and send them to Trump's Voodoo doctor and her chicken entrails. AKA Dr. Deamon DNA").

Some, including former Congresswoman Cynthia McKinney, recognized Tegna's wrongdoing:

> https://twitter.com/cynthiamckinney/status/1456062277401157638
> ("I support Dr. Stella; everyone can see through this persecution of her and all other anti-Deep State, healing physicians . . .").

8. The qualities disparaged by Tegna and its agents – Dr. Immanuel's medical judgment, advice, credibility, honesty, integrity, ethics, intelligence, performance and ability to perform as a licensed medical doctor – are peculiarly valuable to her and are absolutely necessary in the practice and profession of any medical professional. Tegna's false Statements ascribe to Dr. Immanuel conduct, characteristics and conditions that are highly prejudicial to her or anyone in her profession.

9. Tegna's false and defamatory Statements injured Dr. Immanuel's reputation and business. In this case, Dr. Immanuel seeks presumed damages, actual damages, special damages and punitive damages as a result of Tegna's defamation and defamation by implication.

## COUNT I – **DEFAMATION**

10. Dr. Immanuel restates paragraphs 1 through 9 of this Complaint, and incorporates them herein by reference.

11. Tegna made, published and republished numerous false factual Statements of and concerning Dr. Immanuel. These false Statements are detailed verbatim above. The Statements are unfair and inaccurate. Tegna published the false Statements without privilege of any kind.

12. The false Statements are defamatory. The Statements accuse and impute to Dr. Immanuel unfitness to perform the duties of an office or employment for profit, or the want of integrity and competence in the discharge of the duties of such office or employment, including violation of Dr. Immanuel's professional duties as a licensed physician, lapse in judgment, deception, lack of ethics, lack of integrity and lack of veracity. The Statements prejudice Dr. Immanuel in her profession as a medical doctor.

13. By broadcasting and publishing the Statements to Tegna television viewers, online viewers, subscribers and advertisers, Tegna knew or should have known that the Statements would be republished over and over by third-parties to Dr. Immanuel's detriment. Republication by Tegna's followers, mainstream media, and users of Twitter was the natural and probable consequence of Tegna's actions and was actually and/or presumptively authorized by Tegna. In addition to their original publications, Tegna is liable for the hundreds of thousands of third-party republications of the false and defamatory Statements under the republication rule.

14. Tegna published the false and defamatory Statements with actual knowledge that they were false or with reckless disregard for whether they were false:

    a. Tegna fabricated statements and falsely attributed statements to Dr. Immanuel that Tegna knew Dr. Immanuel had never made. Tegna knew that Dr. Immanuel had not been disciplined for prescribing HCQ. Tegna made it appear as if they had direct knowledge of facts, when they did not have one shred of evidence to support the statements. Indeed, they knew from their review of the remedial plan that the Statements were false. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination").

    b. Prior to publication, Tegna knew from prior reporting and the reporting of others that Dr. Immanuel's statements about HCQ were true. Tegna published the false statements in spite of its actual knowledge of the truth, and in order to disparage and discredit Dr. Immanuel's professional reputation.

c. Tegna harbored an institutional hostility, hatred, extreme bias, spite and ill-will towards off-label COVID treatment protocols. This bias and prejudice motivated Tegna to publish the intentionally false statements about Dr. Immanuel, and to disparage her prescription of HCQ. Tegna intended to inflict harm through knowing or reckless falsehoods. *Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn. 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice.").

d. Tegna willfully abandoned all journalistic standards and integrity in broadcasting, publishing and republishing the false Statements. They did not seek the truth or report it. Rather than minimize harm, Tegna immediately set out to inflict maximum pain and suffering on Dr. Immanuel in order to harm her reputation and disparage her treatment protocols. Tegna broadcast and published the Statements in the broadest manner possible, to television, Internet and social media audiences, for the sole purpose of injuring Dr. Immanuel's reputation. They refuse to be accountable; refuse to acknowledge their mistakes; and, of course, refuse to apologize. As a sure sign of its actual malice, Tegna did not even bother to contact Dr. Immanuel for comment prior to publication. *Project Veritas v. New York Times*, Case 63921/2020 (Westchester County Mar. 18, 2021) (Opinion & Order, p. 13) (one of the reasons the New York Times was guilty of actual malice was that it intentionally declined to seek comment from the

plaintiff prior to publication, which "blatantly violated NYT's own published policies and ethical guidelines".).

16. As a direct result of Tegna's defamation, Dr. Immanuel suffered presumed damages, actual damages and special damages, including, but not limited to, loss of income, impaired future earnings and career damage, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, costs and other out-of-pocket expenses, in the amount of $25,000,000 or such greater sum as is determined by the Jury.

## COUNT II – DEFAMATION BY IMPLICATION

16. Dr. Immanuel restates paragraphs 1 through 15 of this Complaint, and incorporates them herein by reference.

17. In the Broadcast and Article detailed above, Tegna juxtaposed a series of facts so as to imply a defamatory connection between them. Tegna conveyed the statements in such a way as to create a false impression that Dr. Immanuel is a quack, and is incompetent and unfit to be a licensed medical doctor. Tegna created the defamatory implication by juxtaposing Dr. Immanuel's professional medical views with certain of her personal religious and spiritual beliefs, so as to create the impression that she was a "voodoo" doctor. Dr. Immanuel's spiritual beliefs have nothing to do with her medical practice, credentials and opinions. Tegna intended and endorsed the defamatory implication by, *inter alia*, the words it used and the manner in which it falsely portrayed Dr. Immanuel.

18. Tegna's Statements constitute defamation by implication.

9

19. The defamatory gist of Tegna's Statements harmed Dr. Immanuel and her reputation, causing presumed damages, actual damages and special damages, including loss of income and career damage and earnings impairment.

20. As a direct result of Tegna's defamation by implication, Dr. Immanuel suffered presumed damages, actual damages and special damages, including, but not limited to, loss of income, impaired future earnings and career damage, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, costs and other out-of-pocket expenses, in the amount of $25,000,000 or such greater sum as is determined by the Jury.

Dr. Immanuel alleges the foregoing based upon personal knowledge, public statements of others, and records in her possession. Dr. Immanuel believes that substantial additional evidentiary support, which is in the exclusive possession of Tegna, their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Dr. Immanuel reserves her right to amend this Complaint upon discovery of additional instances of Tegna's wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Dr. Immanuel respectfully requests the Court to enter Judgment against Tegna as follows:

A. Compensatory damages in the amount of $25,000,000;

B. Punitive damages in an amount to be determined by the Jury;

  C. Prejudgment interest on the principal sum awarded by the Jury at the maximum rate allowed by law;

  D. Postjudgment interest at the maximum rate allowed by law;

  E. Costs and other recoverable amounts as allowed by law;

  F. Such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**

DATED: November 3, 2022

      DR. STELLA IMMANUEL

      By: */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone: (804) 501-8272
        Facsimile: (202) 318-4098
        Email: stevenbiss@earthlink.net

        *Counsel for the Plaintiff*